449 So.2d 1120 (1984)
STATE of Louisiana
v.
Whaland M. SHEPHERD.
No. 83-KA-785.
Court of Appeal of Louisiana, Fifth Circuit.
April 9, 1984.
*1121 John M. Mamoulides, Dist. Atty., David C. Loeb, Asst. Dist. Atty., Twenty-Fourth Judicial Dist. Court, Gretna, for plaintiff-appellee.
Joseph L. Montgomery, Staff Appeals Counsel, Twenty-Fourth Judicial Dist. Court, Indigent Defender Bd., Gretna, for defendant-appellant.
Before BOWES, CURRAULT and DUFRESNE, JJ.
CURRAULT, Judge.
Whaland M. Shepherd was charged by bill of information with two counts of simple burglary (LSA-R.S. 14:62). A plea of not guilty was entered at arraignment. Pre-trial motions, including a motion to suppress confession, were heard on February 23, 1983. Trial before a six-person jury commenced on May 16, 1983, and on the following day the jury returned a verdict of guilty as to both counts. On July 13, 1983, Judge James L. Cannella sentenced the defendant to a term of six years imprisonment in the custody of the Department of Corrections on each count. The sentences were ordered served consecutively with each other and with a previous sentence imposed as a result of an armed robbery conviction. From his conviction and sentence the defendant now appeals.
On the evening of November 27, 1982, Whaland M. Shepherd was visiting with his brother-in-law, Michael Chaisson, at Chaisson's father's residence. Later, Shepherd left the house accompanied by Chaisson who drove to a nearby lounge. Shortly thereafter, Chaisson left the lounge, informing Shepherd that he was going to Lafayette; however, two or three hours later Chaisson returned to the lounge and asked Shepherd if he wanted to take a ride in a boat. According to Shepherd, Chaisson had the boat attached to his truck at the time. After some discussion as to the destination, the two drove to Lafitte and launched the boat. They decided then to take some nets and trawl boards off the large trawl boats. They broke into two boats and removed a multitude of items, including several weapons. As they were returning to the launch, running the boat at full speed, both Shepherd and Chaisson were thrown from the boat. While swimming towards the bank, Chaisson was struck by the boat and apparently drowned. Shepherd looked briefly for Chaisson. He then became frightened, swam to the bank and hitchhiked to his father-in-law's house. Several days later, on December 2, 1982, when Chaisson's body was located, Shepherd told Chaisson's wife of the events leading to his death. She subsequently notified the police.
On December 3, 1982, five officers of the Jefferson Parish Sheriff's Office arrested Shepherd at his residence charging him with the two boat burglaries and satisfying two outstanding attachments, one for armed robbery and one for driving while intoxicated.
He was transported to the detective bureau where, after being advised of his Miranda rights, he gave an inculpatory statement.
On appeal defendant asserts the following assignments of error:
(1) The trial judge committed reversible error in failing to grant the defendant's motion to suppress a written confession, in violation of LSA-C.Cr.P. Article 703.
(2) The trial judge's sentence, although within statutory limits, was excessive, in violation of Article I Section 20 of the Louisiana Constitution.
On Assignment of Error No. 1, the defense argument is twofold: that (1) a statement made by Detective Dennis Thornton to the defendant to the effect that "it would probably go easier on him in court" if he confessed, constituted an impermissible inducement rendering defendant's subsequent inculpatory statement involuntary, and that (2) the degree of force used by the officers to effect the arrest constituted impermissible *1122 force and coercion, rendering the statement involuntary.
LSA-R.S. 15:451 provides that "[b]efore what purposes [purports] to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises." See also State v. Narcisse, 426 So.2d 118 (La. 1983); State v. Serrato, 424 So.2d 214 (La. 1982); State v. Taylor, 422 So.2d 109 (La. 1982); State v. Petterway, 403 So.2d 1157 (La.1981); and State v. Hall, 434 So.2d 517 (La.App.2d Cir.1983).
It is also incumbent upon the state to establish that the defendant who makes an inculpatory statement during a custodial interrogation has been informed of his Miranda rights. State v. Taylor, supra, at page 116; Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
It is a well settled constitutional principle that confessions obtained by any direct or implied promises, however slight or by the exertion of any improper influence, are involuntary and inadmissible as a matter of law. Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897); State v. Jackson, 414 So.2d 310 (La.1982); State v. Hall, supra.
Once a defendant maintains that his confession was obtained in such a manner, the state must specifically rebut the allegations to carry its burden of proving the confession voluntary. The state may not rely on general disclaimers of inducements or promises. State v. Serrato, supra; State v. Petterway, supra.
No serious contention has been made by the defense that Shepherd did not receive his Miranda rights; rather, the focus of inquiry is whether the statement of Detective Thornton constituted an implied promise of leniency so as to render the subsequent statement inadmissible.
The following statements are excerpted from the testimony at the suppression hearing:
Q. At any time during the course of this statement, did you threaten him or offer him any inducements to make the statement?
A. No, sir. The only thing I recall advising him was that if he didunder this investigation it would probably go easier on him in court the fact that making that we have to prove his guilt. Other than that, I didn't promise him any material or any type of amnesty or anything like that.
On cross-examination, the following testimony was elicited:
Q. You testified during direct examination that it would go easier on him in court if he signed this statement; is that correct?
A. Yes, sir....
Q. So, you obtained his confession by telling him whatever evidence you had against him, telling it would be easier with him in court if he confessed to it?
A. No, sir, not condensed like that, no. I implicated to him during the time that he was questioned that it would be a lot easier on him if he did goyou know, if he came forward like he did, and give a confession.
Q. Didn't you testify that no offers were made to him?
A. No, sir. Right. I didn't.
Q. But you did say it would go easier on him?
A. Yes, sir, I did.
Q. Were you any more specific than that?
A. No, sir.
Q. Did the defendant appear willing to take you up on your offer of leniency if he confessed?
A. No, sir. He just basically understood. It wasn't no offer of leniency; it was just a term I used to explain to the gentlemen casually what would happen to him. I wasn't going to offer anything like that at all.
In State v. Petterway, supra, at page 1160, a similar statement was made by a deputy to the effect that the accused would *1123 be better off if he cooperated with the authorities. In holding the subsequently given statement admissible, the Louisiana Supreme Court stated: "Statements of this type, rather than being promises or inducements designed to extract a confession, are more likely musings not much beyond what this defendant might well have concluded for himself." See also State v. Jackson, supra; State v. Dison, 396 So.2d 1254 (La. 1981); State v. Vernon, 385 So.2d 200 (La. 1980).
As the Second Circuit Court, in State v. Hall, supra, held:
"A confession is not rendered inadmissible by the fact that law enforcement officers exhort or adjure a defendant to tell the truth provided that the exhortation is not accompanied by an inducement in the nature of a threat or one which implies a promise of reward....
"The comment of the police officer ... that it would be better or things would be easier if the defendant cooperated and made a statement did not amount to a prohibited promise or inducement designed to extract a confession. The comment amounted to no more than a mild exhortation to tell the truth." At page 519.
Similarly, we find that the comment by the police officer in this case did not contain an implied promise of leniency so as to render the inculpatory statement involuntary, but was merely a mild exhortation to tell the truth as in Hall and Petterway.
The defendant next asserts that the degree of force utilized to effect his arrest constituted duress designed to extract a confession, and that again, under LSA-R.S. 15:451, the statement must be suppressed.
The defendant, by brief, asserts two specific instances of intimidation: (1) The presence of five officers at the scene of the arrest and in and out of the interrogation area during the taking of his statement, and (2) an injury to his wrist allegedly caused by the handcuffs during interrogation.
The question of voluntariness of a confession must be resolved from the facts and circumstances of each case. The trial judge must consider the "totality of circumstances" in deciding whether the confession is admissible. See State v. Serrato, supra; State v. Hernandez, 432 So.2d 350 (La.App.1st Cir.1983).
Pursuant to LSA-R.S. 15:451, the state has the burden of proof concerning the voluntariness of the statement. As noted in State v. Dison, supra, at page 1257, in this regard two principles are pertinent.
"First, the state cannot rely upon general disclaimers that no undue influence was brought to bear upon a defendant who confesses to a crime: the defendant's specific allegations must be specifically rebutted. See State v. Franklin, 381 So.2d 826 (La.1980), State v. Davis, 380 So.2d 607 (La.1980). Second, when credibility is at issue, a trial judge's determination should not be upset unless it is unsupported by the evidence. See State v. Robinson, 384 So.2d 332 (La. 1980), State v. Jackson, 381 So.2d 485 (La.1980)."
Detective Thornton testified that five officers were present at the time of the arrest but that no more than two were in the interrogation office at any one time. As noted by the state in argument "at the time of the arrest the defendant was at his home with family members around. The police officers were necessary to provide appropriate security; ...."
At the time of the arrest, the police officers were aware of certain facts which easily justify that certain precautions be taken with this defendant. Namely, (1) the defendant had previously pled guilty to an armed robbery but failed to show up for sentencing; (2) he was believed to have been involved in two burglaries in which numerous weapons were stolen; and (3) he was at least a witness to an unsolved homicide.
As to the presence of additional officers in the interrogation office, the trial court found that there was not "anything unusual *1124 ... relative to the physical circumstances in the police state." The interlocking nature of the homicide and burglary investigations would justify an officer from each department being present. However, Thornton testified that the other officers neither participated in the interrogation (apart from Detective Rooney speaking briefly to the defendant before the questioning was begun and afterward to obtain booking information for the armed robbery attachment), nor were there more than two officers at a time in the interrogation room.
The testimony in this regard is a question of credibility, and the trial court's rejection of defendant's claim of intimidation must be upheld since the evidence supports the conclusion. State v. Dison, supra.
Finally, the defendant argues that the discomfort of the handcuffs constituted impermissible force. At trial, the wife of the defendant testified that he developed a problem with his right hand as a result of being handcuffed. Medical records were introduced at trial which indicated that during March, 1983 (three and a half months after the arrest) Shepherd was diagnosed as suffering from "R. Carpal Tunnel Syndrome", a peripheral nerve injury.
Detective Thornton testified at the suppression hearing as follows:
Q. For security measures, was the defendant handcuffed during this interview?
A. Yes, sir, I believe he was, sir.
Q. Did he ever ask you to remove the handcuffs?
A. No, sir, not that I can recall.
Q. Did he ever indicate to you that the handcuffs were too tight and cutting off circulation to his hands?
A. He may have. I believe at one point I might have taken one of the cuffs off and handcuffed him to the chair he was sitting in. I'm not really too sure about that.
Q. The defendant did complain to you of physical discomfort during this interview?
A. If it was, which I really don't recall, it was very, very minor.
Q. Did youwhen the defendant complained to you about his physical discomfort, did you in any waydid you simply continue asking him questions?
A. No, sir.
Q. At what point in this interview did you stop to handcuff one of his hands to the chair?
A. It may have been, I believe, between the beginning and the middle of the interview.
Q. So, you continue asking the questions and you didn't inspect his hands to see if circulation was cut off?
A. Yes, sir, I believe I had to, because I believe the defendant was right handed and he had to sign the form. He couldn't sign it with handcuffs on.
The state's exhibits corroborate the testimony of Detective Thornton. The two items, the "Rights of Arrestee or Suspects" and the "Voluntary Statement" forms contain Whaland Shepherd's signature no less than seven times and his initials no less than six, all apparently made without discernable difficulty.
As noted previously, "when credibility is at issue, a trial judge's determination should not be upset unless it is unsupported by the evidence." State v. Dison, supra, at page 1257. See also State v. Hernandez, supra.
Considering the "totality of the circumstances" presented by the facts of this case, it is our opinion that the conduct of the arresting/interrogating officers did not affect the voluntariness of the defendant's confession; thus we find that the inculpatory statement was properly admitted into evidence.
On the second Assignment of Error, the defense concedes that the trial judge properly delineated his reasons for sentencing in compliance with LSA-C.Cr.P. Article 894.1; however argues that:
"The trial judge failed to take into consideration the seriousness of the defendant's wife's condition, and the resulting effect on his family's welfare if in *1125 fact he were incarcerated for a long period of time. Placing the two six year burglary sentences consecutive to each other and to an armed robbery sentence can only have the effect of depriving his family of the care and support he could provide for a long period of time."
The defendant was found guilty of two violations of LSA-R.S. 14:62 (simple burglary). The aggregate penalty which could have been imposed was twenty-four years at hard labor. See LSA-R.S. 14:62.
In evaluating a claim that a sentence is unconstitutionally excessive, a reviewing court will examine the articulated reasons of the trial judge to determine whether he has abused his considerable sentencing discretion.
From a plethora of cases on this issue, a rather standardized definition of excessiveness has emerged. The following is excerpted from State v. Tompkins, 429 So.2d 1385, 1388 (La.1982).
"We have determined that a sentence constitutes excessive punishment if it (1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime. [citations omitted] A sentence may be deemed unconstitutionally excessive even though it falls within statutory limits."
The trial judge is given a wide discretion in the imposition of sentences within statutory limits, and the sentences imposed by him should not be set aside in the absence of a manifest abuse of discretion. State v. Washington, 414 So.2d 313 (La. 1982); State v. Abercrumbia, 412 So.2d 1027 (La.1982).
In setting forth his reasons for imposing two consecutive six-year sentences, the trial judge carefully examined the character and propensities of the offender and the circumstances surrounding the offense. He noted that Shepherd, only months previously, had pled guilty to an armed robbery but had failed to show up for sentencing. Because of that fact, the trial judge concluded that there was an undue risk that the defendant's course of criminal conduct would continue. Additionally, the trial court found that the offense did cause serious harm, both to the victim in the loss of unreplaced property and to the co-perpetrator who lost his life during the course of the offense. Because of the severe consequences, the judge felt that any lesser sentence would deprecate the seriousness of the crime. Although not expressed by the trial court, the theft herein of a large number of weapons would indicate the conclusion of the court was not in error.
Following the designation of the aggravating circumstances, Judge Cannella also considered the mitigating circumstances presented within the pre-sentence investigation and by defense counsel at the time of sentencing. Contrary to the allegation of defense counsel on appeal, Judge Cannella specifically noted that because of the serious illness of Shepherd's wife, the jail term would be a particular hardship on his family. But in balancing that fact, the judge noted that Shepherd's accomplice (his brother-in-law) was killed as a result of their criminal activities and, despite that fact, Shepherd had not shown remorse or repentance for his behavior.
A reviewing court will not substitute its judgment for that of the trial court unless the sentence imposed is grossly out of proportion to the offense. State v. Davenport, 445 So.2d 1190, 1197 (La. 1984). See also State v. Roussel, 424 So.2d 226 (La.1983); State v. Lewis, 414 So.2d 703 (La.1982). In our opinion, defendant's aggregate sentence of twelve years is not grossly out of proportion to the offenses which involved a death and theft of weapons. Thus, the sentences imposed by the trial court will not be disturbed.
Therefore, after a review of the law and the evidence, the convictions and sentences of defendant, Whaland Shepherd, are hereby affirmed.
AFFIRMED.