499 So.2d 1149 (1986)
STATE of Louisiana
v.
Ginger TOUPS.
No. 86-KA-369.
Court of Appeal of Louisiana, Fifth Circuit.
December 8, 1986.
Writ Denied February 13, 1987.
*1150 J. William Starr, Gretna, for appellant.
John M. Mamoulides, Dist. Atty., 24th Judicial Dist., Jefferson Parish, Steve Wimberly, Dorothy A. Pendergast, Asst. Dist. Attys.; Gretna, for appellee; Louise Korns, Office of the Dist. Atty., of counsel.
Before CHEHARDY, C.J., and KLIEBERT and WICKER, JJ.
CHEHARDY, Chief Judge.
Defendant, Ginger Toups, appeals her conviction by guilty plea of theft over $500, a violation of LSA-R.S. 14:67. She was sentenced to imprisonment for five years, however, the sentence was suspended and she was placed on active probation for five years. In addition, Toups was fined $500, ordered to pay certain fees and ordered to serve 30 days in parish prison. As a special condition of probation, Toups was also ordered to make restitution, plus pay interest, as determined by the probation department.
On appeal, defendant alleges the trial court erred in denying her motion to suppress her confession on the basis it was not voluntarily given. She further asks the court to review the record for error patent.
The facts reveal that defendant gave two statements to the police regarding money taken from the Miller Wall Co-op. In the first statement Toups accused her cousin Barry Agoff of forcing her at gunpoint to write and cash two checks on the Co-op's account. She had access to the account as the treasurer of the organization. Approximately five weeks later defendant was requested to return to the police station for a second interview. At that time, Toups signed a statement confessing that Agoff was innocent and that she had been using Co-op funds for her own personal expenses. *1151 In the confession she stated she periodically replaced some of the funds.
On appeal, defendant argues that the motion to suppress the confession should have been granted because the State failed to offer rebuttal testimony showing the voluntary nature of the statement after the defendant put on evidence to show a mental disorder. She alleges her condition, called schizoaffective disorder, created such anxiety at the interview that she confessed in order to "get it over with". She also asserts the detective conducting the interview made certain promises and exerted improper inducements to obtain the confession.
Defendant testified she went to the detective bureau in response to a call by Detective Dennis Gordon of the Jefferson Parish Sheriff's Office telling her he needed some more information on the case. She stated that after discussing her first written statement, Detective Gordon told her "why don't you tell me the real truth, the whole story?" She claimed Detective Gordon told her if she signed the paper, she would just have to appear before the district attorney and just "get a little slap on the wrist and it would be all over." Defendant testified that Detective Gordon supplied her with some of the answers on the statement and that although she knew the statement was false when she signed it, she did so in order to get out of the detective bureau, thinking it would be all over.
Toups testified Detective Gordon did not physically force her to sign but he strongly suggested it verbally. She denied she spontaneously confessed to the crime and stated she never asked that the interview be terminated because she felt legally that she could not leave. On cross-examination, defendant admitted she was advised of her rights and read them before she signed the statement.
Detective Gordon testified that during the course of the interview, there was a period of time when Ginger Toups became silent. He claimed she then made an oral admission, stating "He did not do it. I took the money." At that point, the officer stated he advised her of her Miranda rights, explained each right to her, and filled out a rights form which she signed. Following that procedure, the detective stated he took a written statement from the defendant. He testified Toups was not coerced or threatened, nor was she offered any inducement, and that she appeared normal, although she had informed him she was under the care of a psychiatrist and was on valium. He further stated defendant did not request that either an attorney or a psychiatrist be present at any time during the interview.
The detective also testified that prior to her confession defendant voluntarily underwent a polygraph test, but asserted he did not mention the results to defendant during the interrogation. He also denied making a statement to Mrs. Toups that "he had an innocent man in jail that he has to get out" or that he told her the district attorney would just give her a "slap on the wrist" if she signed the statement, that the matter would not go to court, and that it would not be in the newspapers.
The final witness to testify at the suppression hearing was Dr. Don F. Carlos, defendant's treating psychiatrist since 1970. Dr. Carlos diagnosed defendant as having a schizoaffective disorder and stated she had been on medication since 1970 when she first became his patient. Dr. Carlos described this disorder as a schizophrenic process which is manifested by distortions in one's thinking which sometimes includes a little paranoia. This disorder is also usually associated with depression and anxiety.
As to her present condition, Dr. Carlos testified defendant appeared to be functioning adequately and her condition appeared to be in remission. Dr. Carlos went on to state that in a stressful situation, it is possible an individual suffering from this mental disorder could slip back into the psychotic state or do almost anything to get out of an anxiety-producing situation. Because of the possible stress produced by the interview with Detective Gordon, Dr. Carlos stated her emotional disorder probably *1152 would have affected the voluntariness of her confession. However on cross-examination, Dr. Carlos testified he did not think defendant's emotional problem would have prevented her from completely understanding her rights. He testified she would have understood the consequences of giving a confession.
Before a confession can be introduced into evidence, the State has the burden of affirmatively proving beyond a reasonable doubt that the confession was free and voluntary and not made under the influence of fear, duress, menaces, threats, inducements or promises. Confessions obtained by any direct or implied promises, however slight, or by the exertion of any improper influence are involuntary and inadmissible as a matter of law. LSA-R.S. 15:451; State v. Shepherd, 449 So.2d 1120 (La.App. 5 Cir.1984); State v. Faulkner, 447 So.2d 1139 (La.App. 1 Cir.1984), writ den., 449 So.2d 1345 (La.1984), cert. den., 469 U.S. 848, 105 S.Ct. 164, 83 L.Ed.2d 100 (1984). The State must also prove that a confession made during custodial interrogation was obtained only after the accused had been advised of his rights under Miranda and had intelligently and voluntarily waived those rights. La. Const. Art. 1, § 13; Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. Shepherd, supra.
Whether a showing of voluntariness has been made is analyzed on a case-by-case basis with regard to the facts and circumstances of each case, and the trial judge must consider the "totality of circumstances" in deciding whether the confession is admissible. State v. Benoit, 440 So.2d 129 (La.1983); State v. Shepherd, supra. The admissibility of a confession is in the first instance a question for the trial judge. His conclusions on the credibility and weight of testimony relating to the voluntariness of a confession are entitled to great weight and will not be overturned on appeal unless they are not supported by the evidence. State v. Taylor, 422 So.2d 109 (La.1982).
A claim of mental illness normally requires a defendant to establish by a preponderance of the evidence that he has a mental illness. Where the voluntariness of his confession is at issue, the State has the burden of establishing the confession was voluntary. State v. Brown, 445 So.2d 456 (La.App. 5 Cir.1984). With regard to the relationship between diminished mental or intellectual capacity and involuntariness, such a condition does not by itself vitiate the ability to knowingly and intelligently waive constitutional rights and make a free and voluntary confession. The critical factor is whether the defendant was able to understand the rights explained to him and to voluntarily give a statement. State v. Brown, supra; State v. Benoit, supra.
In this case, the evidence shows defendant was coherent when she gave the statement and that the only emotion she showed was she cried "a little bit" after signing the confession. The detective stated he felt comfortable that defendant could give a statement despite the fact she had taken a valium that day.
Defendant admitted her rights were read to her and that she waived them before giving the confession. She also admitted to signing the statement. Although she stated she felt compelled to sign in order to leave the detective bureau, at no time did she ask to leave, and at no time did the detective tell her she was not free to leave.
In addition, Dr. Carlos testified defendant's disorder seemed to be in a state of remission, and that she was on a very low dose of medication. Although he could not predict what she might do in a stressful situation, Dr. Carlos testified defendant's emotional disorder would not have prevented her from understanding her rights. However, he concluded her illness could have possibly affected the voluntariness of anything she did. Finally, he testified that defendant was an intelligent woman, and he believed she should have known the consequences of giving a confession. The evidence showed defendant was a high school graduate and had three and a half years of college where she majored in social *1153 studies and pre-law. She had previously been employed as a receptionist and in public relations, and was later employed at Miller Wall School, doing office work and substitute teaching.
After reviewing the evidence herein, we conclude defendant's mental disorder did not affect the voluntariness of her confession. Thus we hold the trial judge did not err in denying the motion to suppress on that basis.
Defendant also contends her statements were not free and voluntary because of promises made to her by the detective. She claims the detective exhorted her to tell the real truth and told her if she signed the "paper", she would only get a "slap on the wrist." She claims he also promised the episode would not appear in the newspapers, and that he "had a man in jail who had to go free."
In general a confession is not rendered inadmissible by the fact that law enforcement officers exhort or adjure defendant to tell the truth provided that exhortation is not accompanied by an inducement in the nature of a threat or is not one which implies a promise of reward. State v. Hall, 434 So.2d 517 (La.App. 2 Cir.1983), writ den., 440 So.2d 759 (La. 1983). The courts have also held that vague promises to help are insufficient to negate the voluntary nature of a defendant's statements, provided he had a clear understanding of his Miranda rights. State v. Faulkner, supra. However, once a defendant maintains that his confession was obtained as a result of any direct or implied promise or as a result of any improper influence, the State must specifically rebut the allegations to carry its burden of proving the confession was voluntary. The State may not rely on general disclaimers of inducements or promises. State v. Shepherd, supra. In Shepherd, the court held a comment by a police officer, that it would go easier on defendant if he confessed, did not contain an implied promise of leniency so as to render the defendant's inculpatory statement involuntary but was merely a mild exhortation to tell the truth.
The same result was reached in State v. Hall, supra; and State v. Petterway, 403 So.2d 1157 (La.1981), where a police officer commented it would be better or things would be easier if defendant cooperated. "Statements of this type, rather than being promises or inducements designed to extract a confession, are more likely musings not much beyond what this defendant might well have concluded for himself." State v. Petterway, id. at 1160.
In the present case, the trial judge apparently accepted the detective's testimony that he made no such statements. That decision is entitled to great weight on appeal and should not be overturned unless unsupported by the evidence. The evidence in this case shows that defendant's mental disorder was in remission; that she should have understood the consequences of signing the confession; that she understood her Miranda rights; and that she understood the effect of waiving those rights. Although she argues she did not feel able to leave the detective bureau, she did not state any reason for her belief and admitted she did not ask to leave or to obtain counsel when she began to feel she was in jeopardy. These factors along with her intellectual level, educational background and employment history support the detective's testimony and the trial judge's decision. Thus, we find the trial judge did not err in denying the motion to suppress on the basis of implied or direct promises or coercion.
Finally, defendant requested that we examine the record for patent error. In this regard, LSA-C.Cr.P. art. 920 provides:
"The following matters and no others shall be considered on appeal:
(1) An error designated in the assignment of errors; and
(2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
For the purpose of an error patent review the "record" in a criminal case includes the caption, the time and place of *1154 holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment or sentence. State v. Henney, 479 So.2d 15 (La.App. 5 Cir.1985).
From a review of the record, we find an illegal sentence was imposed. As a condition of probation the judge ordered that defendant make restitution, plus pay interest, as determined by the probation department. However, the statutory authorization for the ordering of restitution as a condition of probation requires the amount thereof to be determined by the court. LSA-C.Cr.P. art. 895(A)(7). See also LSA-C.Cr.P. art. 895.1(A). When restitution is ordered in an amount to be determined by the probation department, the sentence is considered illegal. State v. Hardy, 432 So.2d 865 (La.1983). Consequently, we must vacate the sentence and remand for resentencing. State v. Hardy, supra.
Accordingly, the defendant's conviction is hereby affirmed, the sentence is vacated and the case is remanded for resentencing according to the applicable law.
CONVICTION AFFIRMED; SENTENCE VACATED; AND CASE REMANDED FOR RESENTENCING.