452 So.2d 1201 (1984)
STATE of Louisiana
v.
Anthony L. DITCHARO and Gerald D. DiMarco.
No. 83-KA-638.
Court of Appeal of Louisiana, Fifth Circuit.
May 30, 1984.
*1203 John M. Mamoulides, Dist. Atty., 24th Judicial Dist., Parish of Jefferson, W.C.D. Friederichsen, William C. Credo, III, Asst. Dist. Attys., Gretna, for appellee; Louise Korns, Asst. Dist. Atty., Gretna, of counsel.
George C. Ehmig, Gretna, for appellants.
Before CHEHARDY and GRISBAUM, JJ., and CLEVELAND J. MARCEL, Sr., J. Pro Tem.
CHEHARDY, Judge.
On December 20, 1982, Anthony L. Ditcharo, Gerald A. DiMarco and Randy Thibodeaux were charged by bill of information with violation of LSA-R.S. 14:62.2, simple burglary of an inhabited dwelling. All pleaded not guilty. On April 5, 1983, after a jury trial, Ditcharo and DiMarco were found guilty as charged. Thibodeaux was acquitted and released.
After denial of the convicted defendants' motion for new trial, Ditcharo was sentenced to ten years at hard labor, DiMarco to six years at hard labor. The first year of both sentences was to be served without benefit of parole, probation or suspension of sentence. From this judgment Ditcharo and DiMarco have appealed.

FACTS
Victor Barca, an acquaintance of defendants who assisted them in the burglary, testified at trial he met with Gerald DiMarco, Anthony Ditcharo and Randy Thibodeaux on the evening of October 22, 1982. On the suggestion of Ditcharo, they discussed burglarizing the home of Yvonne DiMarco, widow of Gerald DiMarco's deceased brother David, and planned their course of action. Barca was to get Mrs. DiMarco and her friend John Smith out of the house and contact the others to begin the job.
Barca went to Mrs. DiMarco's and invited her and Smith to dinner, but they refused. Mrs. DiMarco later testified they were made uncomfortable by Barca's nervous demeanor and wanted to be alone. In an attempt to rid themselves of Barca's company, they told him they planned to visit friends and offered to give him a ride. They dropped him off at a gasoline station, from which he telephoned the defendants to advise them the victims were gone. The defendants picked up Barca, drove to the DiMarco residence and broke into the house. One of Mrs. DiMarco's neighbors testified he had seen DiMarco, Ditcharo, Barca, and a fourth man whom he did not recognize, driving down the street that evening between 9:30 and 10:00.
*1204 Meanwhile, Mrs. DiMarco and her companion became increasingly suspicious in recalling Barca's behavior. Accordingly, they decided to leave their friends and return home. They returned home about half an hour later to see Gerald DiMarco and Anthony Ditcharo standing in the driveway holding Mrs. DiMarco's microwave oven. The two men saw them and dropped the oven; Ditcharo grabbed a gun. At that moment Barca came out the kitchen door. All four intruders then ran to the back yard and jumped the fence, fleeing only with the small objects stuffed into their pockets.
Mrs. DiMarco and Smith found the house ransacked, with jewelry boxes scattered, and kitchen and entertainment appliances on the carport. Mrs. DiMarco eventually notified the police and an investigation was conducted. The four subjects were later arrested and prosecuted for simple burglary of an inhabited dwelling.

ASSIGNMENTS OF ERROR NOS. 1, 2 and 7
These three assignments of error were submitted with the record on appeal, but have not been briefed. Accordingly, we consider them to have been abandoned. Uniform Rules, Courts of Appeal, Rule 2-12.4; State v. Triplett, 434 So.2d 1270 (La. App. 1st Cir.1983); State v. Dirden, 430 So.2d 798 (La.App. 5th Cir.1983).

ASSIGNMENT OF ERROR NO. 3
Defendants contend the trial court committed reversible error in refusing to permit defense counsel to cross-examine the state's prosecuting witness, Mrs. Yvonne DiMarco, relative to her antagonism toward the DiMarco family; defendants assert this has a direct relevancy to Mrs. DiMarco's motive in placing charges against the defendants.
According to the defense, at David DiMarco's funeral on July 7, 1981, Yvonne approached Gerald to ask him to intercede with his mother about transferring to Yvonne his mother's inherited interest in some separate property in St. Tammany Parish that David had owned. Apparently Gerald refused Yvonne's request, and the defense contends this has resulted in a distinct bias and prejudice on the part of Yvonne against Gerald. The defense suggests this is why she brought burglary charges against her former brother-in-law and his codefendants.
At trial, defense counsel attempted to question Mrs. DiMarco relative to David DiMarco's funeral and the St. Tammany parish land. The State objected, and the court sustained the objection upon learning the funeral in question took place in 1981. Apparently the judge concluded the incident was too remote because it occurred over 15 months prior to the burglary and 21 months before trial.
The defense argues that the court's action denied defendants their right to crossexamine Mrs. DiMarco as to the whole case, denied them the right to introduce impeachment evidence, and prohibited counsel from explaining the reasons for such questions. Because he was not allowed to cross-examine Mrs. DiMarco concerning her failed attempt to gain possession of her late husband's property, the defense submits that the trial court's ruling constituted reversible error.
As authority for this argument, the defendants cite LSA-R.S. 15:280 (scope of cross-examination), LSA-R.S. 15:486 (right of each side to impeach) and LSA-R.S. 15:492 (questions concerning particular facts showing bias, interest or corruption of witness). They also cite several cases to show, first, that a witness may be examined as to the whole case and may be impeached by evidence not independently admissible, State v. Morgan, 367 So.2d 779 (La.1979); and second, that a witness' personal bias against a defendant is a proper means of impeachment, State v. Bretz, 394 So.2d 245 (La.1981); State v. Robinson, 337 So.2d 1168 (La.1976).
In State v. Robinson, supra, the court stated that although Louisiana jurisprudence has generally permitted the full scope of cross-examination to expose any bias or interest of the witness that might *1205 influence his perceptions or color his testimony, the bias permitted to be exposed must be personal against the defendant rather than general in nature, and the interest must be particular as to the case. General prejudices or special biases or interests too irrelevant to or too remote from issues of the case at trial are considered improper as impeachment of a witness for this purpose.
The trial judge is vested with wide discretion to determine the relevancy of evidence, and his ruling will not be disturbed absent a clear showing of abuse of discretion. State v. Miles, 402 So.2d 644 (La.1981); State v. Garrison, 400 So.2d 874 (La.1981).
The incident concerning the St. Tammany property was remote from the crime here. Further, Mrs. DiMarco's request to Gerald DiMarco was that he act as intermediary; her grievance, if any, was not against him. We conclude the district court was correct in disallowing further cross-examination of the witness on this issue.

ASSIGNMENT OF ERROR NO. 4
Defendants argue the court committed reversible error in refusing to allow the defense the right to obtain handwriting specimens from Mrs. DiMarco. They claim these are relevant to her offering to sell dangerous drugs to a member of the DiMarco family, thus impeaching her testimony.
During cross-examination of Mrs. DiMarco, defense counsel asked her to write a few words for him. The State objected, on the basis of irrelevancy, and the judge immediately requested the jury to leave the room. Because defense counsel refused to divulge his reasons for the handwriting sample, the court sustained the State's objection.
The defense then attempted to lay a predicate for the request by asking the witness whether she had ever been a drug dealer, which she denied. Counsel then asked whether she had ever given a written note to one Michael DiMarco, a retarded cousin of Gerald DiMarco. The State objected to the questioning as impermissible, and the defense argued he was entitled to test the witness' integrity. The trial court ruled that no foundation had been laid because the date of the note was unknown and could not be tied to the burglary, so the witness would not be required to give a handwriting sample.
Because the attempt to impeach Mrs. DiMarco was blocked, defendants argue the trial court committed reversible error. They contend that once she denied writing the note, they should have been allowed to introduce proof to the contrary by obtaining a handwriting sample for comparison with the note, for it could not be introduced otherwise. (Their objective was to disprove Mrs. DiMarco's denial of narcotics dealing by establishing she had written an unsigned note referring to a drug deal.)
LSA-R.S. 15:493 requires that a foundation be laid prior to introduction of any evidence contradictory to his testimony. If the witness does not distinctly admit making such a statement, evidence that he did make it is admissible.
Here, Mrs. DiMarco did not respond to the question about the note. The judge requested a predicate as to the time frame in which the note was made, and defense counsel admitted he was unable to establish that. Because the witness did not admit giving a note to Michael DiMarco, and the defense could not lay a proper foundation for impeachment, the trial court was correct in ruling the note inadmissible. State v. Albert, 414 So.2d 680 (La.1982).
Further, if the defense was attempting to impeach Mrs. DiMarco on facts collateral to the main issue at trial, such questioning is clearly improper. LSA-R.S. 15:494. The defense's attempt to show that the witness had been involved in drug trafficking might have a bearing on the jury's opinion of her, but it is purely a collateral issue not relevant to the question of the defendants' culpability of the crime charged. There is no showing that evidence *1206 of the witness' possible criminal behavior would prove her to be biased or prejudiced against the defendants.

ASSIGNMENT OF ERROR NO. 5
Defendants aver the court committed reversible error in denying the defendants the right to examine witness Mrs. Chrsie DeQueant about a telephone conversation between Mrs. DeQueant and Mrs. Yvonne DiMarco. Defendants state such examination was intended to impeach Mrs. DiMarco's testimony and to show she made statements against her interest.
The conversation is alleged to have occurred between the time Mrs. DiMarco discovered the burglary and the time she notified the police. Mrs. DiMarco denied making such a telephone call. The defense then called Mrs. Chrsie DeQueant, Yvonne DiMarco's former mother-in-law, to the stand. Mrs. DeQueant testified her son Gerald and his wife had spent the entire evening at her house, having dinner and watching television. She stated they left about 10:40 p.m., and that shortly thereafter she received a telephone call from Yvonne.
Mrs. DeQueant was not allowed to relate the substance of the conversation, on the ground it was hearsay. The trial court ruled that defense counsel could elicit testimony to impeach Mrs. DiMarco's denial she made a phone call, but for that purpose only; the witness was not to respond as to the contents.
Defendants contend that the evidence is admissible as a statement against interest. They argue it was reversible error to refuse to allow further examination to determine what was said so as to impeach Mrs. DiMarco's testimony.
In State v. Martin, 356 So.2d 1370 (La. 1978), the court noted that on occasion it has considered an out-of-court assertion by a testifying witness not hearsay and therefore admissible. Upon reflection, however, the court concluded that "the hearsay character of a proffered out-of-court assertion is not altered by the fact that the statement was made by a person who appears in court as a witness." 356 So.2d at 1374. The court stated,
"* * * Therefore, in criminal cases we reject the position taken by those who would admit prior statements of witnesses in toto. * * * The better view allows only certain prior statements of witnesses thought by circumstances to be free of the danger of abuse, namely, statements of identification, inconsistent statements, and consistent statements where admissible to rebut a charge of `recent fabrication.' [Citations omitted.]" 356 So.2d at 1374, note 3.
If the conversation involved a statement contradicting Mrs. DiMarco's in-court testimony, the trial court correctly refused to allow its introduction because no proper foundation had been laid. Mrs. DiMarco was not specifically referred to the gist of the alleged conversation and so was not in a position to admit or deny her prior statement. See LSA-R.S. 15:493.
Defendants have not mentioned what the alleged statement against interest by Mrs. DiMarco concerned. It is impossible to rule on the relevancy of such a statement without some inference as to its content.
Mrs. DeQueant was able to testify that Mrs. DiMarco had called her the night of the burglary; Mrs. DiMarco denied the call. This contradictory evidence served to impeach the State's witness. It was left to the jury, as finder of fact, to weigh the credibility of the witnesses. LSA-C.Cr.P. art. 802(3). We find no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 6
Defendants contend the court committed reversible error in overruling their objection to the State's reference to defendants as "bad guys" during closing argument, because no evidence of good character of defendants had been introduced at trial. They further raise as error the court's comment to the jury that the State's remark was to be taken as argument only, and the court's denial of their subsequent motion for mistrial.
*1207 During closing argument, the prosecutor reviewed the testimony of the witnesses, summing it up by saying that the State's witnesses all had told the truth. He then apparently intended to go over Victor Barca's testimony. Barca, one of the four originally charged with the crime, had agreed to testify against the remaining three defendants.
The prosecutor stated, "Victor Barca is obviously a bad guy as are these defendants," at which point he was interrupted by defense counsel's objection. The defense maintains the trial judge should have admonished the jury to disregard that remark. Instead, the judge advised the jurors,
"The characterization as stated by the district attorney will be taken by the jurors as further argumentand argument onlynot proving anything by the State that one who commits a burglary is a bad guy.
"It is up to the jury to determine if these defendants have, in fact, committed a burglary."
The defense cites numerous cases for the proposition that if the defense does not bring in character witnesses, the state cannot present evidence of the defendant's bad character. In addition, LSA-C.Cr.P. art. 774 provides that the argument shall not appeal to prejudice. The defense contends the "bad guys" remark created prejudice in the jurors' minds, but no proper admonition was given to disregard the remark. Therefore, argue defendants, a mistrial should have been granted.
LSA-C.Cr.P. art. 770 lists the types of comments considered to be grounds for mistrial:
"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
"An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial."
The remark made here did not fall within the four possibilities listed in Article 770. However, the comment did fit within the scope of LSA-C.Cr.P. art. 771, which provides:
"In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
"In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial."
The judge's admonishment in this case was in the form of an explanation that the *1208 prosecutor's statement was argument only. In his instructions to the jury, the trial judge again reminded the jurors that in closing argument the attorneys may present their contentions and conclusions concerning the evidence, but that closing arguments are not to be considered as evidence.
Although the trial court has the discretion to grant a mistrial when an admonition alone will not insure the defendant a fair trial, a mistrial is a drastic remedy, warranted only when trial error results in prejudice to the defendant so substantial as to deprive him of a fair trial. State v. Goods, 403 So.2d 1205 (La.1981).
We conclude that the trial court's immediate explanation and subsequent instruction to the jury clarified the matter. Because the direct evidence presented by the State was overwhelming, we cannot find that the single remark by the prosecutor that the defendants were "bad guys" contributed to the verdict. Accordingly, we find no merit to this assignment of error.
For the foregoing reasons, the judgment of the district court is affirmed.
AFFIRMED.