625 So.2d 507 (1993)
STATE of Louisiana
v.
William WATKINS.
No. 93-KA-310.
Court of Appeal of Louisiana, Fifth Circuit.
September 28, 1993.
*509 John D. Rawls, Indigent Defender Bd., Gretna, for defendant/appellant.
Dorothy A. Pendergast, Asst. Dist. Atty., Gretna, for plaintiff/appellee.
William B. Faust, III, Asst. Dist. Atty., Metairie, for plaintiff/appellee.
Before BOWES, GRISBAUM and WICKER, JJ.
BOWES, Judge.
Defendant, William Watkins, appeals his conviction and sentence for manslaughter, a violation of LSA-R.S. 14:31. For the following reasons we affirm.

PROCEDURAL HISTORY
The Jefferson Parish Grand Jury returned an indictment against the defendant on July 18, 1991. Defendant was charged originally with first degree murder in violation of LSA-R.S. 14:30. At the arraignment defendant pled not guilty. Subsequently, the State amended the indictment to charge defendant with second degree murder. The matter proceeded to trial before a twelve person jury on September 21-25, 1992. After considering the evidence presented, the jury found defendant guilty of manslaughter. On December 2, 1992, the trial judge sentenced defendant to ten years at hard labor, with credit for time served. Defendant appeals.

FACTS
Ms. Barbara Jefferson testified that she had known defendant for approximately six years, during which time they had an intimate relationship. As a result of this relationship, they had one child together. Ms. Jefferson claimed that she and defendant had lived together for several months, however, he was not living with her during the three month period prior to the incident, although he did visit and stay overnight about seven times.
On July 6, 1991, at approximately 1:30 a.m. defendant, William Watkins, arrived at Ms. Jefferson's residence, located at 1036 Sandalwood Drive in Harvey and sought to enter. At that time, Ms. Jefferson and a friend, Tommy Brual, were in her bedroom watching television while her three girls were in the den. When no one opened the door to let Watkins in, he climbed through the window *510 and called for Barbara. When he saw Brual, the two started fighting. According to Ms. Jefferson, the defendant had a screwdriver in his hand but Brual had no weapon. As a result of the fight, defendant apparently stabbed Brual with a screwdriver causing him to fall to the ground.
After Brual fell, Ms. Jefferson and defendant got into a fight. Defendant hit her and then left. She grabbed the phone from her daughter, who was trying to contact police, and called the police.
Deputy Sean Lusk of the Jefferson Parish Sheriff's Office responded to the 911 call. At that time Brual was transported to the hospital where he died at approximately 3:00 p.m.
Sergeant Curtis Snow subsequently arrived at the scene and took over the investigation. Snow initially talked to the officers on the scene to get an idea of what had happened. He then talked to the family members living at that residence and investigated the scene for possible evidence.
In the meantime, defendant, as a possible suspect, was apprehended in the area and brought back to the scene. Sergeant Snow instructed Deputy Roger Ballard to take defendant to the detective bureau for an interview.
Once at the detective bureau, Sergeant Schultz advised defendant of his constitutional rights and went over the waiver of rights form with defendant. After being so advised defendant signed the form, expressing his desire to waive his constitutional rights and make a statement. Defendant then gave a taped statement which was later transcribed. At the time of the statement, defendant was charged with aggravated battery; however, when the victim died, the charge was changed to murder.
In the defendant's statement, which was admitted into evidence at the trial, he stated that he climbed through the window when no one answered the door. As he went to the bedroom, he called out Barbara's name. As a man whom he had never seen before ran towards him, defendant started swinging the screwdriver that he had in his hand. After the defendant hit him with the screwdriver, he fell down. The defendant left and threw the screwdriver by the tree in the front yard. In his statement, defendant claimed that he previously had lived at that residence with Barbara and her three children for about one year.
Further summaries of the evidence and testimony of the trial are unnecessary for purposes of this appeal, except to reiterate that following trial, the jury found the defendant guilty of manslaughter.

ASSIGNMENT OF ERROR NUMBER ONE

WHETHER THE TRIAL COURT ERRED IN DENYING THE MOTION TO SUPPRESS THE APPELLANT'S TAPED STATEMENT.
Defendant sets forth several contradictions in the testimony of the police officers and contends that "these contradictions would cause any reasonable person to harbor a reasonable doubt as to the circumstances under which this confession was obtained." He further contends that because the State failed to carry its heavy burden of proof due to these irreconcilable contradictions, the motion to suppress should have been granted.
Before a confession or inculpatory statement can be introduced into evidence, the State has the burden of proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. LSA-C.Cr.P. art. 703(D); LSA-R.S. 15:451; State v. Vaccaro, 411 So.2d 415 (La.1982); State v. Leeming, 612 So.2d 308 (La.App. 5 Cir.1992). It must also be established that an accused who makes a confession during a custodial interrogation was first advised of his constitutional rights as per Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and voluntarily and intelligently waived those rights. State v. Castillo, 389 So.2d 1307 (La.1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1004 (1981); State v. Weiland, 556 So.2d 175 (La. App. 5 Cir.1990).
In Weiland, supra, we further summarized other jurisprudence on the issue as follows:
Whether a showing of voluntariness has been made is analyzed on a case by case *511 basis with regard to the facts and circumstances of each case. The trial judge must consider the `totality of the circumstances' in deciding whether the confession is admissible. State v. Shepherd, 449 So.2d 1120 (La.App. 5th Cir.1984). The admissibility of a confession is in the first instance a question for the trial judge. His conclusions on the credibility and weight of testimony relating to the voluntariness of a confession are entitled to great weight and will not be overturned on appeal unless they are not supported by the evidence. State v. Benoit, 440 So.2d 129 (La.1983), State v. Toups, [499 So.2d 1149 (La.App. 5th Cir.1986) ] supra, State v. Beck, 445 So.2d 470 (La.App. 2nd Cir.1984), writ denied, 446 So.2d 315 (La.1984).
Also, State v. Castillo, supra.
In the present case, the issue of the voluntariness of the statement turns on the credibility of the witnesses. The following testimony was adduced at the suppression hearing which was conducted on October 9 and 16, 1992:
Sergeant Norman Schultz of the Jefferson Parish Sheriff's Office testified that on July 6, 1992, pursuant to Officer Snow's request, he interviewed defendant at the detective bureau. Prior to taking a statement, Schultz read defendant his rights, explaining each one, and then allowed defendant to read the rights himself. Schultz also advised defendant that he was under arrest and would probably be charged with aggravated battery. After advising Schultz that he clearly understood everything, defendant signed the waiver of rights form, expressing his desire to make a statement. At approximately 4:05 a.m., after a brief oral interview, Officer Schultz began taping defendant's statement, which was later transcribed. It is noted that Sergeant Schultz and defendant were alone during the course of this interview.
According to Schultz's testimony, defendant was very cooperative. Defendant spoke in a normal tone of voice and did not appear to be intoxicated. In addition, defendant was not coerced, intimidated or promised anything in exchange for making the statement, although he was told that it is always best to cooperate. After Schultz testified about the circumstances surrounding the making of the statement, the State rested.
Defendant then called several officers, who were present at the scene, to testify in an attempt to show that a great deal of physical pressure was placed on defendant which caused him to feel compelled to cooperate. However, these officers denied that any mistreatment to defendant occurred or that any undue or improper physical pressure was applied to him.
After the testimony of these officers, defendant testified that when he was initially stopped by Detective Jerry Lewis, he was physically mistreated. According to defendant, Lewis stopped him, placed him up against the car, and then waited for other officers to arrive before handcuffing him. After he was handcuffed, Lewis stepped on the back of his knee, causing defendant to go down to the ground. At that point, two other deputies told him that "you're about to have a lie detector test." They then hit him in the head with a flashlight, about 3 or 4 times, in an attempt to get information about the location of the screwdriver. He was placed in a police car and brought around the corner to the scene of the crime. While there, one officer told defendant that if they did not find the screwdriver, he was going to be sorry. They then took defendant out of the car to look for the screwdriver although defendant stated he was not being intimidated during the actual search. Thereafter, defendant was transported to the detective bureau. Defendant admitted that he was not physically mistreated once he got to the detective bureau. The detective read him his rights, told him that he was charged with assault and battery, and asked if he wanted to make a statement. When defendant asked the detective if he had to make one, the officer told him that it would be better if he made one because the judge would see that he had cooperated. He admitted, however, that the officer did not force him to give a statement.
Defendant additionally testified that had he known at the time that he was charged with murder, as opposed to assault or battery, he would not have made a statement, and that the fact that the officers previously *512 mistreated him made him nervous and scared.
After hearing and considering the evidence presented, the trial judge denied defendant's motion to suppress statement, stating on the record that she found the testimony of the officers to be more believable. Defendant now alleges that the trial judge erred in allowing the introduction of his statement.
In the present case, when the trial judge was faced with a credibility call, she chose to believe the testimony of the police officers which stated that the defendant freely and voluntarily gave the statement after being fully advised of his rights.
Although there were some discrepancies in the testimony of the officers, our review of the testimony reveals that any such discrepancies do not impact on the credibility findings of the trial court. All of the officers testified that they knew of no mistreatment, coercion, threats, intimidation, or beating which took place at any time prior, during, or after the arrest of the defendant. Defendant himself admitted that he was not mistreated during his time at the station. Defendant attempts to impugn the credibility of Sgt. Schultz in particular, pointing out that Schultz testified that Officer Snow told the defendant just after he gave his statement (some time shortly after 4:00 a.m.) that the victim had died. Snow himself testified that the victim died later that afternoon at 3:00 p.m., some eleven hours later. While these statements do appear irreconcilable, we emphasize that Schultz and the defendant agree on the crucial issuethat there was no coercion or intimidation at the station when the statement was given.
Defendant's claims of prior coercion were contradicted by the testimony of several police officers, and we find no error or abuse of discretion on the part of the trial court in concluding that the officers were more credible and therefore that the statement was voluntary. This conclusion appears to be amply supported by the evidence.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
WHETHER THE TRIAL COURT ERRED IN DENYING A MOTION FOR MISTRIAL FOLLOWING PREJUDICIAL REMARKS BY THE STATE.
In one of his statements to a panel of prospective jurors, the assistant district attorney stated the following:
As I explained yesterday, there are many principles in law that apply to the jury, and one of the things I want to do is go over those with you so I know that we all understand them and that we're all working from the same page, as they say, but that we also all understand what those principles are. Now, one of those principles is that you need to understand, is that a defendant is presumed to be innocent at the start of trial, and that each of you in your own mind must be able to accept that presumption. Now, many times we hear that referred to as a Constitutional right, to be presumed innocent; and, in a way it is, but you don't find that in the Constitution. It's not written in there in any place, you just don't find it in there; but the Courts have invented that as a fiction in order to create a level playing field, so to speak. So it is a judicial fiction that is created that you must accept before we begin a trial. The people that are victims of the crime don't have to accept it. The police that investigated it don't have to accept it; but we ask that you do, as jurors, because
At that point, defense counsel requested a bench conference, at which time he objected to the prosecutor's characterization of the presumption of innocence as a judicial fiction. After further discussion at the bench, defense counsel stated:
Your Honor, I think that at this point I need to object on the grounds of the mischaracterization. I request that the Court give an instruction to these panel members now, as to clarify this issue, because if it's just him and me arguing, they're not going to know who means what and you're not saying anything. I request that you clarify it; otherwise, I'm going to request a mistrial.
*513 In response to defendant's request, the trial judge then clarified the presumption of innocence by instructing the prospective jurors as follows:
Okay, there's justI want to read you now just the one paragraph that I'm going to be reading you who will serve as jurors at the end of the trial, so that you understand that the defendant isit's a Constitutional issue that "the defendant is presumed to be innocent until each element of the crime necessary to constitute his guilt is proven beyond a reasonable doubt. The defendant is not required to prove that he is innocent, thus, the defendant begins the trial with a clean slate." So that's what I'm going to be reading you at the end of the trial, regarding the presumption of innocence of the defendant, as he sits here today. It's a Constitutional issue and I want that to be very clear with all of you. Okay, go ahead.
Outside the presence of the jury, defense counsel expressed his dissatisfaction with the trial judge's explanation and requested a mistrial. The trial judge denied defendant's request for a mistrial; however, it requested the State not mention "fiction" again.
Defendant now complains that the trial court committed manifest error by failing to perform its mandatory obligation to admonish the jury to disregard the prejudicial comment.[1]
We find that the comment fits within the scope of LSA-C.Cr.P. art. 771, which provides:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770. In such cases on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
Art. 771 leaves the decision as to whether to grant a mistrial or admonition to the sound discretion of the trial court. A mistrial is a drastic remedy and is warranted only when trial error results in substantial prejudice to the defendant sufficient to deprive him of a fair trial. State v. Goods, 403 So.2d 1205 (La.1981); State v. Camp, 580 So.2d 957 (La.App. 5 Cir.1991); State v. Robinson, 598 So.2d 407 (La.App. 5 Cir.1992).
In the present case, we note that defense counsel originally requested only that the trial judge give an instruction to the jury to "clarify" the issue raised by the district attorney's remarks. The trial judge complied with this request and, although the trial judge did not specifically tell the prospective jurors to disregard the comment, she did instruct them on the presumption of innocence. In our opinion, her immediate instruction *514 to the jury, as requested by defense counsel, clarified the matter sufficiently to prevent any prejudice to the defendant's right to a fair trial and complied with the procedural law involved.
We find no abuse of discretion in the refusal of the trial court to grant a mistrial under the circumstances present here. In a similar vein, see State v. Ditcharo, 452 So.2d 1201 (La.App. 5 Cir.1984), writ not considered, 456 So.2d 162 (1984). Also see State v. Givens, 445 So.2d 9 (La.App. 4 Cir.1983) in which the court held that "regardless of the manner or form used, this admonition adequately informed the jury that the prosecutor's questions were to be disregarded."
In addition, see State v. Green, 416 So.2d 539 (La.1982).
ASSIGNMENT OF ERROR NUMBER THREE
WHETHER THE STATE DENIED APPELLANT A FAIR TRIAL BY A JURY REPRESENTATIVE OF THE COMMUNITY WHEN IT STRUCK ALL AFRICAN-AMERICAN MEMBERS OF THE VENIRE WITHOUT STATING OR HAVING NEUTRAL REASONS SUPPORTED BY THE RECORD.
Here, defendant alleges that each of the State's three peremptory challenges which were used to exclude blacks from the jury had no neutral basis reasonably supported in the record and that, even if the striking of each individual on its face was innocuous, taken together they show a clear pattern of a successful attempt by the State to get a jury that was entirely white to try the fate of a black defendant.
In the present case, there were four black veniremen. Of these four, three were peremptorily challenged by the State, and the other one was apparently challenged by defense counsel. Although defendant and victim were black the resultant jury was composed of all white members.
In response to these challenges by the State, defendant lodged an objection pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) alleging racial discrimination in the jury selection process. The court thereafter accepted the State's reasons for challenging these three jurors and overruled defendant's objection to the challenges.
Defendant now claims that as a result of the trial judge's ruling, he was denied his right to a fair trial by a jury representative of the community.
It is well established that use of preemptory challenges based solely on a juror's race is prohibited. Batson v. Kentucky, supra. In Louisiana law, this rule is set forth in LSA-C.Cr.P. art. 795 which provides, in pertinent part, as follows:
C. No peremptory challenge made by the state shall be based solely upon the race of the juror. Whenever it appears that the state is systematically excluding jurors on the basis of race, the defense may demand a disclosure of reasons for the challenge. Neither the demand nor the disclosure shall be made within the hearing of any juror or prospective juror.
D. (1) When a demand for disclosure has been made under Paragraph C of this Article, the court shall determine whether there exists an apparent systematic exclusion of jurors on the basis of race.
(2) In making this determination, the court shall not consider any jurors who have been peremptorily challenged by the defense or who have been excused for cause.
(3) If the court finds an apparent systematic exclusion upon the basis of race, it shall then require a statement of reasons for the exercise of peremptory challenges, but only as to those jurors considered in making the finding of apparent systematic exclusion.
E. The court shall allow to stand each peremptory challenge for which a satisfactory racially neutral reason is given. Those jurors who have been peremptorily challenged, and for whom no satisfactory racially neutral reason is given may be ordered returned to the panel, or the court may take such other corrective action as it deems appropriate under the circumstances. The court shall make specific findings regarding each such challenge, and shall give specific reasons for the corrective action taken.
*515 Under Batson, supra, in order to prove purposeful discrimination in the selection of the petit jury, the defendant has to show that he is a member of a cognizable racial group; that the prosecutor exercised peremptory challenges to remove from the venire members of the defendant's race; and that the facts, and other relevant circumstances, raise an inference that the prosecutor used the peremptory challenges to exclude the veniremen from the petit jury on account of their race. The combination of these factors establishes a prima facie case of purposeful discrimination. State v. Collier, 553 So.2d 815 (La.1989); State v. Gilmore, 522 So.2d 658 (La.App. 5 Cir.1988).
However, the United States Supreme Court, in Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), modified the standard to be used in determining purposeful discrimination in the selection of the jury. In Powers, the court found that defendant need no longer be a member of the cognizable racial group which has been excluded.
Thus, it is no longer required that defendant show he is a member of a cognizable racial group and that members of that group were systematically excluded. Nonetheless, such facts are relevant to establish a prima facie showing. In Powers, supra, the Supreme Court stated:
The emphasis in Batson on racial identity between the defendant and the excused prospective juror is not inconsistent with our holding today that race is irrelevant to a defendant's standing to object to the discriminatory use of peremptory challenges. Racial identity between the defendant and the excused person might in some cases be the explanation for the prosecution's adoption of the forbidden stereotype, and if the alleged race bias takes this form, it may provide one of the easier cases to establish both a prima facie case and a conclusive showing that wrongful discrimination has occurred. But to say that the race of the defendant may be relevant to discerning bias in some cases does not mean that it will be a factor in others, for race prejudice stems from various causes and may manifest itself in different forms.

Powers v. Ohio, 499 U.S. at p. 416, 111 S.Ct. at pp. 1373-1374.
Also, State v. Thomas, 604 So.2d 52 (La.App. 5 Cir.1992).
Once the defendant has established a prima facie case of purposeful discrimination, the burden is on the prosecution to present a neutral explanation for the challenges. State v. Gilmore, 522 So.2d 658 (La.App. 5 Cir. 1988); State v. Thom, 615 So.2d 355 (La.App. 5 Cir.1993).
In the present case, the State peremptorily challenged three black jurors over objection of defense counsel. Those jurors were: Jefry Smallwood, Willie Franklin, and Doris Dixon.
The State gave the following reasons for excusing Mr. Smallwood:
His response to three questions troubled me, Judge. One was that, in giving the illustration of a clerk or a cashier or somebody being robbed, he would have considered it self-defense, if that person had a gun and had made a motion; after that, there was some attempt at rehabilitation, but counsel went on to another hypothet and came back to that. He finally agreed to the hypothet, but it still left that, I think, clouding the issue. He also said that he didn't know that if he recognized some people or knew some people in the case, he couldn't say whether or not it would affect him. He gave that answer. The third thing was he had an expression that he believed reasonable doubt was a hundred percent certain. There was also some attempt at rehabilitation, but I'm not confident that he understood it.
Regarding Ms. Franklin, the State excused her for the following reasons:
She is acquainted with one of the witnesses in this case, which is not always a bar to it, but the witness in this case is a very key witness, and the relationship this lady had is as a teacher. Even though it's been some many years, the teacher'sit's my experience that the teacher's attitude, sometimes, towards her students is very strong and very fixed, and, for that reason, I would ask that she be excused.
The State gave the following reasons for excusing Ms. Dixon:

*516 Okay. The State is going to challenge for cause, once again on the fact that she is acquainted with one of the witnesses; your Honor, in this case, this is a witness that's totally unknown to us and we don't know for what reason that witness is called, or what it's about, so, therefore, we feel there's great danger that she, knowing this witness, may give that witness more credibility, or even less credibility, we just don't know, so we challenge for cause.
After the State exercised a peremptory challenge on this black juror, the defense noted a Batson objection and after listening to the argument of the State, the trial judge noted such but accepted the State's explanations as satisfactory.
After considering the facts in this record, as well as all relevant circumstances, we do not find that defendant has established a prima facie case of purposeful discrimination. The record shows that the State did not exercise its peremptory challenges to exclude only, or all of, the prospective black jurors. None of the prosecutor's statements or questions during voir dire support any inference of a discriminatory purpose. Furthermore, the reasons given by the State for the challenges indicate racially neutral reasons. Therefore, even assuming that the defendant made a prima facie showing of purposeful discrimination, the State, through its explanations, successfully rebutted this showing.
See State v. Thom, supra; State v. Thomas, supra.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER FOUR
WHETHER THE TRIAL COURT ERRED IN REFUSING TO STRIKE NUMBERS OF THE VENIRE WHO EXPRESSED AN UNWILLINGNESS TO APPLY THE LAW OF MANSLAUGHTER, THEREBY FORCING THE DEFENDANT/APPELLANT TO EHAUST ALL OF HIS PEREMPTORY CHALLENGES BEFORE THE TWO FINAL PANEL MEMBERS WERE SEATED.
Defendant complains that the trial judge erred because she would not permit defense counsel to challenge for cause three prospective jurors, Susan Davis, Beryl Conzonere, and Hilda Wood, who said, during voir dire examination, that they did not think an average man would kill another man whom he found in his wife's bed.
LSA-C.Cr.P. art. 797 sets forth the grounds upon which a juror may be challenged for cause. That article reads, in pertinent part, as follows:
The state or the defendant may challenge a juror for cause on the ground that:
* * *
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
* * *
(4) The juror will not accept the law as given to him by the court; or
* * *
The defendant must show two elements to prevail on this alleged error; (1) that a challenge for cause by the defendant was erroneously denied by the trial judge; and (2) that all of the defendant's peremptory challenges had been exhausted. State v. Lee, 559 So.2d 1310 (La.1990), cert. den., 499 U.S. 954, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991), reh'g den., ___ U.S. ___, 111 S.Ct. 2068, 114 L.Ed.2d 472 (1991); State v. Comeaux, 514 So.2d 84 (La.1987).
The trial judge is vested with broad discretion in ruling on challenges for cause; his ruling will be reversed only when a review of the entire voir dire reveals that the judge's exercise of discretion was arbitrary and unreasonable with resultant prejudice to the accused. State v. Knighton, 436 So.2d 1141 (La.1983), cert. den., 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984); State v. Bates, 397 So.2d 1331 (La.1981).

*517 `A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial if the juror's responses as a whole reveal facts from his bias, prejudice or inability to render judgment according to law may be reasonably implied.' State v. Jones, 474 So.2d 919, 926 (La.1985); State v. Wiggins, 518 So.2d 543 (La.App. 5 Cir.1987), writ denied, 530 So.2d 562 (La.1988). The true test of a juror's qualification to serve is his or her ability to judge impartially based on the evidence adduced at trial, as determined from the totality of responses given at voir dire. State v. Williams, 410 So.2d 217 (La.1982). When a prospective juror has expressed an opinion seemingly prejudicial to the defense, but on further inquiry demonstrates the ability and willingness to decide the case impartially according to the law and evidence, a challenge for cause is not warranted. State v. Heard, 408 So.2d 1247 (La.1982). The trial judge has broad discretion in ruling on a challenge for cause and his ruling will not be disturbed on appeal absent a showing of abuse. State v. Wiggins, supra.

State v. Jackson, 601 So.2d 730 (La.App. 5 Cir.1992).
In the instant case, defendant contends that these three jurors should have been stricken by the court because they stated that they would be unable to follow the law on one of the most crucial issues of the trial, i.e., the difference between second degree murder and manslaughter.
In response to questioning, Ms. Susan Davis stated her opinion that she did not think an average man would kill another man that he found in his wife's bed. However, she subsequently stated that she thought some homicides were justifiable for self-defense or in protection of a person's children.
Ms. Beryl Conzonere likewise expressed her opinion that under the circumstances set forth by defense counsel, she recognized that an average person would get hot blooded, but not to the point of murder. She likewise stated that some homicides may be justifiable, such as in the case of self defense.
Ms. Hilda Wood stated that she did not feel an average person is subject to committing murder; however, she thereafter expressly stated that she could apply the law, including that on manslaughter.
In the present case, looking at the voir dire as a whole, we find that the trial judge did not abuse her discretion in denying these three challenges for cause. The prospective jurors did not state that they could not follow the law based on the evidence, but rather stated that under the circumstances given by defense counsel, they did not think that an average person would commit murder. We note, as did the trial court, that the hypothet (of a man finding his wife in bed with another man) referred to by the defense counsel, did not address nor conform to the actual facts of this case.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER FIVE
WHETHER THE TRIAL COURT COMMITTED MANIFEST ERROR IN PASSING SENTENCE WITHOUT APPLYING SENTENCING GUIDELINES.
LSA-C.Cr.P. art. 881.1 provides in pertinent part:
* * *
D. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review. Added by Acts 1991, No. 38, § 1, eff. Jan. 31, 1992.
That article became effective on January 30, 1992. Defendant was sentenced on December 2, 1992. Thus, art. 881.1(D) applies to this defendant. Since he failed to file a motion to reconsider as mandated by art. 881.1, he is precluded from raising this issue on appeal. State v. Collins, 606 So.2d 585 (La.App. 5 Cir.1992). State v. Morgan, 612 So.2d 302 (La.App. 5 Cir.1992).
Accordingly, this assignment lacks merit.

*518 ERROR PATENT DISCUSSION

We have reviewed the record for patent error in accordance with LSA-C.Cr.P. art. 920 and under State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Williams, 593 So.2d 753 (La.App. 5 Cir.1992), and we find no such error.
For the foregoing reasons, the conviction and sentence of the defendant are affirmed.
AFFIRMED.
NOTES
[1] LSA-C.Cr.P. art. 770 lists the types of comments considered to be grounds for mistrial:

Upon motion of defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
In the present case, the remark made by the prosecutor did not fall within the four categories listed in article 770; therefore the granting of a mistrial was discretionary.