laCANNELLA, Judge.
Defendant, Angel Nieves, appeals from his conviction of carjacking, a violation of La. R.S. 14:64.2. Following a multiple bill hearing, defendant was sentenced, as a fourth felony offender, to fifty years at hard labor with credit for time served. We affirm the conviction and sentence, and remand with an order relative to notice of the prescriptive period for post-conviction relief.
On January 1, 1994 at about 1:00 p.m., Jayne Marie Phillips, a college student, stopped her Acura Integra automobile at a Shell service station on Airline Highway in Jefferson Parish Louisiana. Leaving the doors unlocked and the motor running, she got out to make a call at a public phone. While she was on the telephone, she saw defendant walk toward her car. She tried, unsuccessfully, to reach the car before defendant. Defendant pushed her aside and sat in the driver’s seat. She grabbed defendant’s arm and attempted to pull him out of the vehicle. She was still gripping defendant’s arm when he began to drive away. | gShe suffered severe contusions to her knee and hand when she was dragged along with the car.
After defendant left, the victim went into the service station and asked for help. The station’s owner, Ahmed Siddiqui, called the police. Thereafter an officer arrived at the scene and completed an incident report. The victim described defendant to the officer as approximately 5 feet 8 inches tall, 175 pounds, short hair, olive complexion and a small mustache. He appeared to be of Hispanic descent and was wearing a leather jacket and dark cap.
Shortly after 5:00 p.m. on January 1, 1994, Trooper Dedeaux of the Mississippi Highway Patrol was on routine patrol near exit 35 on Interstate 59. He received a radio call regarding a one-car accident at mile marker 31. When he arrived at the accident site, he saw a red Acura Integra, which had been driven onto the median and into a tree. The car smelled strongly of alcohol and there were beer cans, cigarettes and a black cap on the floorboard. The driver of the car was not at the scene.
Trooper Dedeaux found a purse on the car’s hood which contained several pieces of identification belonging to Jayne Phillips. Bystanders at the scene told Dedeaux that they had not seen anyone near the car who fit the victim’s description, but that they had seen a black male near the car attempting to flag down passing vehicles. The trooper called in this description to the Purvis County sheriffs department.
As a result of the identification found in the car, Mississippi authorities contacted the Louisiana State Police and Miss Phillips and learned that the car had been stolen. This information was passed to Trooper Dedeaux through his dispatcher. The trooper learned through the Purvis County sheriffs department that a black male, meeting the description of the man seen near the car, had been spotted using the telephone at a service station about a mile from the scene |4of the accident. Trooper Dedeaux proceeded to the service station. An employee there informed him that the subject had left the station heading in the direction of a nearby highway exit ramp. The trooper conducted a search of the area and, at about 6:30 p.m., saw defendant walking from a wooded area.
Trooper Dedeaux stopped defendant and checked his identification. Defendant, smelling strongly of alcohol, was wearing a dark football jacket and blue jeans. Trooper De-deaux took defendant into custody.
Detective Bill Mouret of the Kenner Police Department learned of the accident and defendant’s arrest from Trooper Dedeaux. Detective Mouret did a records cheek of defendant and prepared a photographic lineup for later that night. At about 10:00 p.m., the victim met with Detective Mouret at the Kenner lockup and, after viewing the photographic lineup, identified defendant as the man who had stolen her car. In a photo lineup, Ahmed Siddiqui also identified defendant as being present at his service station *683 some 20-25 minutes prior to the carjacking. Based on the victim’s identification, Detective Mouret obtained an arrest warrant for defendant.
On January 2, 1994, Detective Mouret went with Sergeant James Gallagher and Officer Wayne McGinnis to Poplarville, Mississippi. The officers investigated the scene of the accident. They also processed the stolen vehicle, which was then located at Miller’s Wrecker Service and Storage Yard. The officers proceeded to the Poplarville jail, placed defendant under arrest and transported him to the jail in Kenner, Louisiana.
On appeal, defendant contends that the trial judge erred in denying his objection to the state’s discriminatory exclusion of two African-American prospective jurors. Defendant is Hispanic and asserts that he is a member of a cognizable racial group and was denied a fair trial because the prosecutor used peremptory challenges to purposefully exclude blacks from the jury. He argues | sthat the trial judge erred when he determined that the prosecutor’s reasons for excusing Louis Monette and Tracy Shaw were racially neutral.
A criminal defendant has the right to be tried by a jury selected by nondiscriminatory criteria, under the equal protection clause of the U.S. Constitution. U.S. Const. Amend. 14; Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The use of peremptory challenges based solely on a juror’s race is prohibited. Batson v. Kentucky, supra. Under Batson, in order to prove purposeful discrimination in jury selection, the defendant must first show that he is a member of a cognizable racial group[1]. Defendant must then show that the prosecutor exercised peremptory challenges to remove members of defendants race from the venire and that the facts and other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to ex-elude the veniremen from the jury on account of their race. When defendant has shown both of these factors, he has established a prima facie case of purposeful discrimination. State v. Thompson, 516 So.2d 349 (La.1987), cert. den. Thompson v. Louisiana, 488 U.S. 871, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988); State v. Watkins, 625 So.2d 507 (La.App. 5th Cir.1993). Once the defendant has established a prima facie case of purposeful discrimination, the burden shifts to the prosecution to present a neutral explanation for the challenges. State v. Watkins, supra; State v. Thom, 615 So.2d 355 (La. App. 5th Cir.1993); State v. Gilmore, 522 So.2d 658 (La.App. 5th Cir.1988).
La.C.Cr.P. art. 795 codified the Batson criteria for challenging the exclusion of jurors, as follows in pertinent part:
|fiC. No peremptory challenge made by the state or the defendant shall be based solely upon the race of the juror. If an objection is made that the state or defense has excluded a juror solely on the basis of race, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory racially neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the voir dire examination of the juror. Such demand and disclosure, if required by the court, shall be made outside the hearing of any juror or prospective juror.[2]
D. The court shall allow to stand each peremptory challenge exercised for a racially neutral reason either apparent from the examination or disclosed by counsel when required by the court. The provisions of Paragraph C and this Paragraph shall not apply when both the state and the defense have exercised a challenge against the same juror.
E. The court shall allow to stand each peremptory challenge for which a satisfac *684 tory racially neutral reason is given. Those jurors who have been peremptorily challenged and for whom no satisfactory racially neutral reason is apparent or given may be ordered returned to the panel, or the court may take such other corrective action as it deems appropriate under the circumstances. The court shall make specific findings regarding each such challenge.
In Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the United States Supreme Court modified Batson. In Powers, the court held that defendant is not required to show that he is a member of the same cognizable racial group whose members have been excluded from the jury. In reconciling its holding with that of Batson, the court stated:
The emphasis in Batson on racial identity between the defendant and the excused prospective juror is not inconsistent with our holding today that race is irrelevant to a defendant’s standing to object to the discriminatory use of peremptory challenges. Racial identity between the defendant and the excused person might in some eases be the explanation for the ^prosecution’s adoption of the forbidden stereotype, and if the alleged race bias takes this form, it may provide one of the easier cases to establish both a prima facie case and a conclusive showing that wrongful discrimination has occurred. But to say that the race of the defendant may be relevant to discerning bias in some cases does not mean that it will be a factor in others, for race prejudice stems from various causes and may manifest itself in different forms.
Powers at 416, 111 S.Ct. at 1373-4.
In this case, the state exercised five of its twelve peremptory challenges. Three of the excused jurors were Caucasian and two were black. The two black jurors, Louis Monette and Tracy Shaw, were apparently the only black members of the fifty person jury veni-re. Counsel raised a Batson objection to the state’s challenges arguing, after the second exclusion, that defendant is a member of a racial minority and that the state was excluding jurors on the basis of race. The trial judge requested that the state explain its reasons, after which, the trial judge concluded that the reasons were race neutral.
When a Batson objection has been raised to the peremptory challenges exercised by the state or defendant, the moving party must first establish a prima facie case of discrimination. In determining whether the mover has established a prima facie case of discrimination, the trial judge should consider all relevant circumstances, including any pattern of strikes against minority jurors and any questions asked or statements made during voir dire examination or in the exercise of challenges which may support or refute an inference of purposeful discrimination. Batson v. Kentucky, 476 U.S. at 94-8, 106 S.Ct. at 1722-3; State v. Collier, 553 So.2d 815, 819 (La.1989).
The record in this case shows that defendant is of Hispanic descent and therefore, is a member of a cognizable racial group. The record also discloses that the state used two of its twelve peremptory challenges to remove the only individuals belonging to a cognizable racial group from the venire. Furthermore, lathe state did not ask Miss Shaw or Mr. Monette any direct questions which would have shed light on the reasons for the exclusions. On the other hand, a review of the prosecutors’ statements and questions during the voir dire do not evidence a discriminatory purpose. Further, we note that three Caucasian jurors were also excluded. Therefore, we find that defendant failed to establish a prima facie ease of racial discrimination. Nevertheless, we will address the second tier of the Batson criteria, as well.
Assuming arguendo that defendant established a presumption of discrimination, the question is whether the state rebutted the presumption by providing a racially neutral explanation for excluding Miss Shaw and Mr. Monette from the jury. Prosecutor George Hesni explained his reasons for excusing Mr. Monette and Miss Shaw as follows:
Your Honor, I don’t believe Batson says that you can’t exclude minorities. You can’t exclude someone of the same race. *685 But beyond that as to Ms. Shaw I know nothing about Ms. Shaw. She did not seem to pay attention when I looked at her. She seemed to look away. I thought I saw her making eye contact with the defendant. She’s never been a victim of a crime. She’s never testified before. There are other members of the panel that I think are more suitable. We know that they’re married. We know that they’re older, they’re more experienced. Ms. Shaw is a very young single woman.
As to Mr. Monette, he’s not working. Although his wife is a special securities officer when 1[3] was addressing the jury he looked at me and looked up at the ceiling and started to smile.
In overruling the objection, the trial judge stated:
... The Court finds that the two jurors who were excused by peremptory challenge, Louis Monette number 237 and Tracy Shaw number 310, are both of the Afro | ^American or Black race and the defendant is of Spanish decent (sic). That they are not of the same racial background though the Court is satisfied that the reasons given by the State with respects to the challenge against both Mr. Monette and Ms. Shaw are neutral reasons and therefore I’m going to deny the challenges by the defense.
The only statements on the record by Miss Shaw and Mr. Monette during jury selection were their marital and employment status and number of children. According to the prosecutors, they dismissed the two based on their demeanor, as well as their backgrounds.
In State v. Williams, 545 So.2d 651 (La. App. 5th Cir.1989), unit denied, 556 So.2d 53 (La.1990); 584 So.2d 1157 (La.1991), this court held that perceived hostility, lack of interest and unresponsiveness are race-neutral reasons to exclude jurors. See also: State v. Gilmore, 522 So.2d at 661, and State v. Manuel, 517 So.2d 374 (La.App. 5th Cir. 1987).
Mr. Hesni expressed concern over Miss Shaw’s youth and apparent inexperience, and Mr. Monette’s employment status. In State v. Thom, supra, this Court found that the prosecutor gave a sufficient race-neutral explanation for exercising a peremptory challenge against a black venire person with no significant work history, on the ground that he was not of suitable age and discretion to render a decision in an aggravated rape case.
Defendant argues that Miss Shaw’s youth is not a race-neutral reason for excusing her, since the state accepted white jurors in the same age group who were also unmarried.[4] However, unlike the other jurors, the prosecutors stated that Miss Shaw made eye contact with defendant, raising concerns that she would be sympathetic toward him. Perceived sympathy with the defendant has Jabeen held to be a neutral challenge under Batson. See: State v. Thompson, 516 So.2d at 354.
The determination as to whether the prosecutor has enunciated race-neutral reasons for using peremptory challenges to excuse black jurors is a factual one made by the trial judge, who has the benefit of hearing the voir dire questions and the answers of prospective jurors. Thus, the trial court’s determination on a Batson claim is entitled to great deference on appellate review, and will not be disturbed unless the record indicates that any reasonable trial court must reach the conclusion that the prosecutor exercised peremptory challenges on the basis of a juror’s race alone. State v. McNeil, 613 So.2d 752 (La.App. 4th Cir.1993), unit granted in part, vacated in part, 623 So.2d 1320. See also State v. Hamilton, 594 So.2d 1376 (La.App. 2d Cir.1992); State v. Lamark, 584 So.2d 686 (La.App. 1st Cir.1991), unit denied, 586 So.2d 566 (La.1991).
*686 After our review of the record, we conclude that the prosecution in this case enunciated reasons for the exclusion of the jurors that are race-neutral. The state did not base its challenges solely on the background of each juror, but also on their demeanor. Those reasons, along with the tenor of the entire voir dire show that the exclusions of the two jurors were not discriminatory. Consequently, we find that the trial judge did not err in overruling defendant’s Batson objection to the peremptory challenges by the state.
Defendant also asks this court to review the record for patent error.
La.C.Cr.P. art 920 provides that: “the following matters and no others shall be considered on appeal: (1) An error designated in the assignments of error; and (2) An error that is discoverable by a mere inspection of the evidence.”
For purposes of an error patent review the “record” in a criminal case (nincludes the caption, the time and place of holding court, the indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict and the judgment of sentence. See State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990). Because defendant admitted to the predicate convictions alleged in the multiple offender bill, we have also reviewed the record to determine whether defendant was properly apprised of his constitutional rights before admitting to the predicate convictions.
The only error that we have discovered requiring action by this court is that the trial judge failed to advise defendant of the time delay for filing for post-conviction relief. La.C.Cr.P. art. 930.8 dictates that, except under certain limited circumstances, a defendant must file his application for post-conviction relief within three years after his judgment of conviction. Section C of this article provides that “At the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post conviction relief.” Defendant’s sentencing transcript does not show that he was informed of the prescriptive period for post-conviction relief. However, the failure to inform defendant is not a ground for vacating the sentence. Rather, the appropriate remedy is to instruct the trial court to inform defendant of the provisions of article 930.8 by sending written notice to defendant within ten days after the rendition of this opinion and to file written proof in the record that defendant received such notice. See State v. Kershaw, No. 94-141 (La.App. 5th Cir. 9/14/94); 643 So.2d 1289.
Accordingly, the defendant’s conviction is hereby affirmed. The case is remanded and the trial judge is ordered to notify defendant of the prescriptive period for post-conviction relief by written notice within ten days of rendition of this opinion and to file written proof that defendant received the notice in the | i2record of the proceedings. Otherwise, defendant’s sentence is affirmed.

CONVICTION AFFIRMED; SENTENCE AFFIRMED. CASE REMANDED WITH ORDER.

. A "cognizable racial group” is defined by the United States Supreme Court in Castaneda v. Partida, 430 U.S. 482, 493, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977) as "one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or applied." (citation omitted).

. It should be noted that 'defense counsel made his objection to the exclusion of black jurors in the presence of prospective jurors. Furthermore, there was considerable discussion of the matter on the record before the jurors were finally excused from the courtroom by the judge.

. Mr. Hesni later corrected himself, noting that it was Leigh Anne Wall, the other assistant district attorney trying the case, who had conducted voir dire for the panel which included Ms. Shaw and Mr. Monette. His comments were therefore made in reference to Miss Shaw's and Mr. Mon-ette's behavior toward Ms. Wall.

. The unmarried jurors selected were Donna Lo-ria, a bakery worker, Dawn Foy, a nurse, Ms. Lynn Ruprich, a teacher, and Brenda Melara, a travel agent. The record does not show these jurors' ages, only that they are single and have no children.